# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA :
: Crim. No. 00-323-02 (KSH)
v. :
: **DECISION ON ELIGIBILITY FOR**
RONALD MACK : **SENTENCE REDUCTION UNDER THE**
: **FIRST STEP ACT**

Before the Court are four motions filed by defendants Rodney Mack, his brother Ronald Mack, Jesse Opher, and Hassan Hawkins (the "Mack defendants") for reduced sentences under § 404 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). (D.E. 530; D.E. 532; D.E. 534; D.E. 536.) The government has opposed (D.E. 547), and defendants have replied (D.E. 550; D.E. 551; D.E. 552; D.E. 553). The Court held oral argument on the motions on June 21, 2019. On June 24, 2019, the government filed a memorandum (D.E. 556) that further addressed certain issues identified at argument.

The focus of the briefing and the extensive argument before the Court is these defendants' eligibility for reduced sentences under the First Step Act, and if eligible, the scope and manner of resentencing/sentence reduction. Deciding these issues requires examination of both the First Step Act and a predecessor, the Fair Sentencing Act.

## I.    The Fair Sentencing Act

On August 3, 2010, the Fair Sentencing Act, Pub L. No. 111-220, 124 Stat. 2372 (2010), was passed.  It is self-described as "An Act To restore fairness to Federal cocaine sentencing."  It reached into the 1986 Controlled Substances Act and changed statutory penalties by increasing the quantity of crack cocaine that would trigger a mandatory minimum sentence.  Whereas the Controlled Substances Act mandated a minimum sentence of five years for possession with intent to distribute or distribution of 5 or more grams of crack cocaine, now the offense had to involve 28 grams or more.  The triggering quantity of crack cocaine for a mandatory ten-year sentence was increased from 50 to 280 grams.  This reduced the sentencing disparity between powder and crack cocaine from 100:1 down to 18:1.[1]

Section 8 of the Fair Sentencing Act directed the United States Sentencing Commission ("the Commission") to implement the penalty changes swiftly.

The United States Sentencing Commission shall—

(1) promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act . . . ; and

(2) pursuant to the emergency authority provided under paragraph (1), make such conforming amendments to the

---

[1] The Act further eliminated mandatory minimum sentences for simple possession of crack cocaine, which had been a term of five years if the quantity was 5 grams or more, plus a sliding scale of mandatory minimums for lesser quantities in the event the accused had prior drug convictions.

2

> Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law.

Thus the Commission was under orders to change the guidelines in order to implement the Act, and it did.

Integral to the Commission's process of implementation is the interplay between the federal sentencing guidelines, specifically the Drug Quantity Table, U.S. Sentencing Guidelines Manual § 2D1.1(c) (2018), and the statutory penalties for drug offenses. As the United States Supreme Court noted in *United States v. Dorsey,* 567 U.S. 260 (2012), the "entire set of crack and powder cocaine offense levels" in § 2D1.1 was adopted by using the two five- and ten-year minimum amounts in the 1986 Controlled Substances Act "as reference points and then extrapolating from those two amounts upward and downward to set proportional offense levels for other drug amounts." *Id.* at 268 (citing *Kimbrough v. United States*, 551 U.S. 85, 97 (2007)).

And so consistent with the Congressional mandate in the Fair Sentencing Act, the Commission adopted amendment 750 that assigned lower base offense levels for the new trigger amounts of 28 grams and 280 grams of crack, which the Commission made retroactive. Then again in 2014, the Commission adopted amendment 782, which further reduced by two levels the base offense levels assigned to many drug quantities (known colloquially as the "drugs minus two" amendment), and it made those changes retroactive as well. According to the Commission, "amendment [782] revises the guidelines applicable to drug trafficking offenses by changing how the base offense

3

levels in the Drug Quantity Table in § 2D1.1 . . . incorporate the statutory mandatory minimum penalties for such offenses." U.S. Sentencing Guidelines Manual supp. to app. C, Amend. 782, cmt. (2018).

Direction on applying the amendments retroactively was set forth in a policy statement in the guidelines, U.S. Sentencing Guidelines Manual § 1B1.10, requiring that the mechanics of changing sentences already reduced to judgment be consistent with the provisions of 18 U.S.C. § 3582(c)(2). In determining whether and to what extent a defendant would receive a sentence reduction, § 1B1.10(b) directs that "the court shall substitute only the amendments listed in subsection (d) [a list of amendments that includes 750 and 782] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." If the amended base level attributable to the drug offense did not lower a sentenced defendant's overall guidelines range, then sentencing relief would not be available; also, any sentence reduction would not constitute a full resentencing. According to the application notes to § 1B1.10(a), "a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if: (i) none of the amendments listed in subsection (d) is applicable to the defendant; or (ii) an amendment listed in subsection (d) is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (*e.g.*, a statutory mandatory minimum term of imprisonment)."

4

Assuming eligibility, "consistent with 18 U.S.C. § 3582(c)(2), the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction, but only within the limits described in subsection (b)."

The foregoing establishes that for those who were already sentenced when the Fair Sentencing Act passed, responsive guideline amendments could achieve a sentence reduction under defined circumstances. And indeed, a swath of incarcerated men and women received lowered sentences, but that only happened *if* the amended base offense level served to reduce their overall guidelines sentencing range. The tie-in was critical. *See, e.g.*, *United States v. Thompson*, 714 F.3d 946, 950 (6th Cir. 2013) ("Because the amendment in question has no effect on the ultimate sentencing range imposed on Thompson under the career offender guidelines, the district court did not err in declining to grant his § 3582(c)(2) motion."); *United States v. Andros*, 507 F. App'x 725, 726 (9th Cir. 2013) ("Andros' pre-variance applicable guideline range was his career offender range under U.S.S.G. § 4B1.1. The Sentencing Commission's amendments to the Guidelines have not lowered that guideline range. Andros is therefore ineligible for a reduction of sentence." (citation omitted)); *United States v. Wilson*, 515 F. App'x 877, 881 (11th Cir. 2013) ("Amendment 750, which only affected the drug quantity tables in § 2D1.1, had no effect on Wilson's guideline sentence, and the district court was not authorized to grant him § 3582(c)(2) relief."); *United States v. Mabry*, 481 F. App'x 797, 798 (3d Cir. 2012) ("As a career offender, Mabry's applicable Guideline range remains

unchanged. Thus, . . . the District Court did not abuse its discretion in denying Mabry's motion."); *United States v. Barlow*, No. 06-694, 2017 WL 10242240, at *3 (D.N.J. Sept. 28, 2017) (Wolfson, J.) ("Thus, even if Amendment 782 had affected the guidelines under which Defendant Barlow was sentenced, and lowered the initially calculated guideline range, the Amendment would nevertheless have been irrelevant to Defendant's ultimate sentence, because the final guideline range under which he was sentenced would have remained the same mandatory minimum sentence required by law.").

Implicit in this approach is how sentences for cocaine crimes are calculated. The driver is the drug and how much of it the defendant trafficked in. Once admitted to or calculated in a defendant's presentence report, the Drug Quantity Table, § 2D1.1(c), sets the base offense level. For example, when Rodney Mack was sentenced in 2002, the quantity of crack cocaine the presentence report attributed to his criminal conduct was between 1.5 to 5 kilograms. That weight of that drug on its own produced the highest base offense level, 38.[2] With other enhancements found by the Court, Rodney Mack's adjusted offense level rose to 46, and he was sentenced to Life under the guidelines, which set a life sentence across all criminal history categories at the adjusted

---

[2] Under the Drug Equivalency Tables, the total combined weight of drugs ascribed in their presentence reports to Rodney Mack and the other Mack defendants was between 41,000 to 133,000 kg of marijuana, calculated by converting the drug quantities determined by U.S. Probation: 50 to 150 kg of cocaine (10,000 to 30,000 kg of marijuana); 1.5 to 5 kg of crack (30,000 to 100,000 kg of marijuana); and 1 to 3 kg of heroin (1,000 to 3,000 kg of marijuana).

offense level 43. Albeit amendment 750 and an earlier amendment 706 were adopted and applied retroactively, they did not serve to change the guideline mandated life sentence.[3] Only when the drugs minus two amendment 782 was adopted, lowering by two the base offense levels for drug offenses, *see United States v. Thompson*, 825 F.3d 198, 202 (3d Cir. 2016) ("[I]n 2014, the Sentencing Commission promulgated Amendment 782 to the Guidelines, which retroactively reduced by two levels the base offense levels assigned to many drug quantities in the Drug Guidelines."), did Rodney Mack's overall sentencing exposure drop below Life. At adjusted offense level 42, his guidelines exposure became 360 months to life.

Even though the Fair Sentencing Act substantially changed statutory penalties for the offenses charged against the Mack defendants, it was quickly and universally concluded that the Act would not be given retroactive effect. *See United States v. Reevey*, 631 F.3d 110, 111 (3d Cir. 2010) ("answer[ing] the question" of whether the Fair Sentencing Act" applies retroactively "in the negative"); *United States v. Blewett*, 746 F. 3d 647, 650 (6th Cir. 2013) (en banc) ("(1) [T]he Fair Sentencing Act's new mandatory minimums do not apply to defendants sentenced before it took effect; (2) § 3582(c)(2) does not provide a vehicle for circumventing that interpretation; and (3) the Constitution does not provide a basis for blocking it."). The same measured and

---

[3] Pursuant to Amendment 750 and 706, Rodney Mack's offense level for the total drug weight attributable to his criminal conduct was reduced to 36. With enhancements, his new adjusted offense level was 44, which still produced a life sentence under the guidelines.

cabined application of Fair Sentencing Act sentence changes was applied to Ronald Mack's and Jesse Opher's life sentences.  Their sentences are now 360 months, *see infra.*

## II.    The First Step Act

On December 21, 2018, Congress passed the First Step Act.  It covered a broad range of topics related to incarceration and re-entry, for example recidivism reduction (Section I); a variety of prisoner welfare and re-entry initiatives (Sections II, III, V, and VI); and relevant here sentencing reform (Section IV).

Shortly after passage of the First Step Act, the Commission's Office of Education and Sentencing Practice issued a Special Edition publication on the new statute.  From the introductory paragraphs:

> The First Step Act (P.L. 115-391) was signed into law by the President on December 21, 2018. The Act deals mostly with reentry of the incarcerated, directing the Federal Bureau of Prisons to take specific actions regarding programming, good-time credit, and compassionate release, among other issues. The Act does not contain any directives to the Commission.
>
> Related to its sentencing reform provisions (Title IV), the Act makes important changes to mandatory minimum penalties and to the safety valve provision (a provision that allows courts to sentence a defendant without regard to the mandatory minimum). Specifically, in relation to Title IV, the Act:
>
> • reduces certain enhanced mandatory minimum penalties for some drug offenders (Section 401);

- broadens the existing safety valve at 18 U.S.C. § 3553(f), increasing the number of offenders eligible for relief from mandatory minimum penalties (Section 402);

- reduces the severity of the "stacking" of multiple § 924(c) offenses (Section 403); and

- applies retroactively the Fair Sentencing Act of 2010 which reduced mandatory minimum penalties for crack cocaine offenses (Section 404).

*ESP Insider Express Special Edition First Step Act*, United States Sentencing Commission Office of Education & Sentencing Practice, at 1 (Feb. 2019), *available at* https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf (hereinafter "*Special Edition*").

Section 404 of the First Step Act provides in full as follows:

SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

9

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Pub. L. No. 115-391, 132 Stat. 5194 (2018).

## III.  Defendants' Eligibility Under the First Step Act – The Arguments

The pending motions were brought by the Office of the Federal Public Defender on behalf of the Mack defendants, and as indicated, the government opposes on the basis of eligibility.  By way of background, the Mack defendants and one other defendant[4] went to trial in September 2001 on a one-count indictment charging a conspiracy to traffic in 5 kilograms or more of powder, and 50 grams or more of crack cocaine.  The indictment when handed down named six additional defendants, all of whom entered pleas, some entering into cooperation agreements under which they gave testimony during the three-month trial.  The jury made identical findings as to the defendants who went to trial:  all were guilty of the conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, and the United States proved that the conspiracy involved 5 kilograms or more of cocaine and 50 grams or more of cocaine base.

---

[4] Maurice Riley received a sentence of 210 months and has since been released.

Sentencing enhancements under the then mandatory guidelines produced life sentences for the Macks and Jesse Opher. Hawkins was sentenced to a term of 360 months to life. After the Commission adopted the drugs minus two guidelines amendment 782 discussed above, the guidelines range for the Macks and Opher dropped to 360 months to life. In 2017 by agreement between the government and the public defender, who represented the four Mack defendants for purposes of calculating the amended guidelines, their sentence became 360 months.

Turning to the parties' dispute about the Mack defendants' eligibility for reduced sentences, the Court notes that a Westlaw search turns up a multitude of written decisions from the last three months resolving applications for sentencing relief under the First Step Act. The decisions run the gamut in terms of process: in some, the sentenced defendants are represented, in others the applications are made pro se and the only filings are the defendant's application and the government's opposition. Some decisions describe court proceedings where the defendants are present in court. Some decisions are written by the judge who rendered the original sentence; in others the sentencing judge was long gone.

The government's opposition in these cases most frequently rests on the offense conduct – did the defendant plead to, or get convicted of, trafficking in a drug quantity that matches or exceeds the triggering quantities in the amended statutory penalties? If so, the government argues there is no available relief. *See, e.g.*, *United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. 2019) ("The government argues that a defendant

is eligible for consideration only if his actual offense conduct quantities fall below the statutory thresholds of the Fair Sentencing Act."); *United States v. Valentine*, No. 99-01-2, 2019 WL 2754489, at \*5 (W.D. Mich. July 2, 2019) (another decision by the *Boulding* court discussing and ultimately rejecting "the government's view, which ties eligibility to quantity"); *United States v. Johnson*, No. 01-543, 2019 WL 2590951, at \*2 (N.D. Ill. June 24, 2019) ("The Government argues that Johnson is not eligible for relief under the First Step Act because 'the record confirms' that the quantity of crack cocaine 'involved' in Johnson's offense was over 280 grams, such that the Fair Sentencing Act would not have modified the applicable statutory penalty."); *United States v. Rose*, 379 F. Supp. 3d 223, 228 (S.D.N.Y. 2019) ("The Government argues that the Court should assess eligibility on the basis of Defendants' actual conduct, rather than the statute of conviction.").

The choice, then, is between finding eligibility based on the statute of conviction vs. finding eligibility based on the offense conduct, that is the quantity of the drug a defendant distributed or possessed with the intent to distribute. In the case at bar, the government focuses on offense conduct, but its very specific argument is that the jury found the Mack defendants also trafficked in a quantity of powder cocaine that triggered statutory penalties under the Controlled Substances Act that the Fair Sentencing Act did not change. Five or more kilograms of powder cocaine continue to be punished by a mandatory minimum sentence of ten years. For this reason, the government argues the Mack defendants were not sentenced under "a covered statute,"

defined in § 404 as one whose statutory penalties have changed.  From the government's

opposing brief:

> Their motions rely on a fiction:  that they are eligible for a
> reduced sentence even though the statutory penalties for a
> single conspiracy to distribute *both* cocaine ("powder
> cocaine") *and* cocaine base ("crack cocaine") have not
> changed.  Facts control here, not fiction, and those facts
> make Defendants ineligible for the relief they seek.

(D.E. 547 at 1.)

The Mack defendants reply that the plain language of § 404 does not permit this

argument because the Fair Sentencing Act changed the statutory penalties of the statute,

21 U.S.C. § 841(b)(1)(A), that they were convicted under.  As such, they contend the

Court may reduce their sentences, and in deciding whether to do that the Court may

consider the quantity of powder cocaine that the jury found they were guilty of

trafficking in.   Pressed to respond to the government's position that the statutory

penalty for 5 kilograms of cocaine had not changed under the Fair Sentencing Act,

counsel for the defendants stood firm:

> Again, I think that is something [the government] can bring
> up as part of, what I call, the discretion of whether the Court
> should reduce.  But I don't think it stands in the way of
> eligibility by reason of the plain language of the statute.

(6/21/19 Tr. at 71:24-72:3.)

At the time the motions were argued, a few cases had found defendants ineligible

for the reason espoused by the government, beginning with Judge Cameron Currie's

decision in *United States v. Westbrook*, No. 09-714-2, 2019 WL 1542571 (D.S.C. Apr. 9,

13

2019), and continuing with her decision in *United States v. Gravatt*, No. 01-736-01, 2019
WL 2366587 (D.S.C. June 5, 2019), on which the government has relied.[5]  In each, the
defendant had pleaded guilty.  *See Westbrook*, 2019 WL 1542571, at *3 ("The record
reflects Defendant agreed to plead guilty and did plead guilty to conspiracy to possess
with intent to distribute five kilograms or more of cocaine. . . . His statutory penalty
was not therefore controlled by the 50 grams or more of cocaine base charged in Count
1."); *Gravatt*, 2019 WL 2366587, at *2 ("The First Step Act amended penalties for
cocaine base, but not cocaine.  Because Defendant also admitted guilt to a cocaine
offense carrying the same penalty, he is not eligible for relief."); *Dewitt*, 2019 WL
2537292, at *4  (concluding that defendant was not eligible for relief under the First
Step Act because "the threshold amount of heroin for that sentence was one kilogram
at the time Dewitt pleaded guilty and the threshold for cocaine was five kilograms" for
a sentence of between ten years and life imprisonment, which had not been affected by
the Fair Sentencing Act); *Smith*, 2019 WL 2330482, at *1 ("In the factual basis of his
plea agreement, Defendant admitted that 'over the years, the Defendant purchased and
redistributed over 150 kilograms of cocaine" and that '[t]he amount of cocaine base
distributed by the Defendant during the period of the conspiracy greatly exceeded 1.5
kilograms.'" (alteration in original)).

---

[5] A few other courts have reached a similar conclusion.  *See, e.g.*, *United States v. Dewitt*,
No. 12-183, 2019 WL 2537292 (S.D. Ohio June 20, 2019); *United States v. Smith*, No.
02-448, 2019 WL 2330482 (M.D. Fla. May 31, 2019).

Very recently the Court of Appeals for the Fourth Circuit affirmed without comment an order denying a § 404 application. *United States v. Jones*, No. 19-6735, 2019 WL 3250281 (4th Cir. July 19, 2019); *see also United States v. Jones*, No. 05-00083 (D.S.C. Apr. 29, 2019), ECF No. 74. The district judge wrote as follows:

> To be eligible for relief under the First Step Act, a defendant must have been convicted of a "covered offense" committed before August 3, 2010. The term "covered offense" is defined in the First Step Act as a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010. The Fair Sentencing Act did not reduce the statutory penalties associated with convictions involving 500 grams or more of cocaine nor did it affect the statutory penalties for a § 924(c)(1) conviction.
>
> In this case, Defendant pled guilty to counts one and three of the indictment. Count one alleged possession with intent to distribute 5 grams or more of cocaine base and 500 grams or more of cocaine. Count three alleged possession of a firearm in furtherance of a drug trafficking crime. Defendant does not qualify for a reduced term of imprisonment because his offense of conviction is not a "covered offense" under the First Step Act.
>
> Additionally, the First Step Act does not require the court to reduce the Defendant's sentence. Section 404(c), First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (stating "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section"). Thus, even if Defendant is technically eligible for consideration of a reduced sentence, the Court would exercise its discretion under the First Step Act and deny Defendant's motion for a reduced sentence because his conviction involves 500 grams or more of powder cocaine and his statutory penalties remain the same after application of the Fair Sentencing Act.

*Jones*, No. 05-00083, ECF No. 74.

The district judge's decision turned on his discretion to deny Jones's § 404 application, finding that "even if Defendant is technically eligible for consideration of a reduced sentence" he could and would deny relief. In context, the "technical eligibility" is precisely the issue here. Moreover, this case involves a jury's guilty verdict while the aforementioned cases all involve guilty pleas.[6]

The operative consideration in these cases is offense conduct and how it supports the charging decision to prosecute for both powder and crack cocaine. How much powder cocaine and how much crack cocaine did the defendant deal in? Confronting the same question, *United States v. Richardson,* No. 07-155, 2019 WL 3017057 (D.S.C. July 10, 2019), came to a different conclusion. Hassan Richardson pleaded guilty to one count charging him and others with conspiracy to possess with intent to distribute and distribute 50 grams or more of cocaine base (commonly known as "crack") and 5 kilograms or more of cocaine (the same charge in this case). In

---

[6] As a matter of interest, Judge Currie's latest decision on this subject, *United States v. Williams*, No. 02-548-03, 2019 WL 3251520 (D.S.C. July 19, 2019), grants relief even after a jury found Williams guilty on various counts in an indictment, including a straight-up count of selling a triggering quantity of cocaine powder. She analyzed on grounds that Williams had been found guilty by a jury as opposed to pleading to a conspiracy count identical to the one in this case. The jury had not been asked if the conviction was for the cocaine or the crack cocaine. On that basis, Judge Currie found Williams was eligible to move under § 404. *Id.* at *2. Because she had "originally fashioned a sentence as a whole for all convictions," Judge Currie held Williams's eligibility on Count 1 "means the court has the authority and discretion to unbundle the sentence and re-sentence on all counts." *Id.*

deciding Richardson was eligible for a sentence reduction under § 404, Judge Joseph

Anderson wrote:

> Here, the record before this court plainly indicates that the
> defendant did not acknowledge responsibility for more than
> 50 grams of powder cocaine. The FBI case agent did not
> attribute 50 grams or more of powder cocaine to the
> defendant. And this court, in explaining the essential
> elements of the offense charged, made it clear to the
> defendant that he could be guilty by conspiring to distribute
> the required amount of either powder or crack cocaine.
> *Because the record in this case clearly shows that the defendant's sentence
> was driven by his involvement with crack cocaine and not the requisite
> 50 grams of powder cocaine, the defendant is entitled to relief under the
> First Step Act.*

*Id.* at *3 (emphasis added).

Unlike Richardson, the Mack defendants were found by the jury to have

trafficked in the requisite amount of powder cocaine. But the court's reasoning is

nuanced: the court acknowledges that by its nature, 21 U.S.C. § 841(a)(1) is violated by

distribution of one or the other drug. And the court looked to the record for what

drove the sentence.

As will be discussed, a substantial number if not most of the multitude of first-

stab-at-the-First-Step-Act cases turn on whether the district judge construes eligibility

under a quantity approach or a "covered statute" approach. In its papers and at

argument, the government has fronted the "powder question" as the main inquiry, but

a proper analysis requires that the Court decide whether the drug quantities attributable

to the Mack defendants, or their violation of 21 U.S.C. § 841, determines their eligibility.

17

## IV.   Defendants Are Eligible for a Sentence Reduction Under Section 404

### A.   Eligibility Depends Upon the Statute the Defendant Violated, Not What the Defendant Did to Violate It

The Court is satisfied that the cases that look to eligibility for reduced sentence under the First Step Act as tied to the statute of conviction are persuasive.  Any other conclusion ignores how the statute is written—broadly, and what its intent is— remedial.

Going back to the text, § 404 applies the Fair Sentencing Act to already sentenced offenders who committed offenses before August 3, 2010, and did not have the benefit of the reduced statutory penalties for cocaine offenses.  The first paragraph defines what a covered offense is: "a violation of a Federal criminal statute, the statutory penalties for which were modified by" the Fair Sentencing Act.

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

The second paragraph sets forth how the statute works for the benefit of persons already serving a cocaine sentence, authorizing a court that "imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act"—the sections that changed the statutory mandatory minimums penalties for crack cocaine offenses—were in effect when the sentenced defendant committed the covered offense.

> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A
> court that imposed a sentence for a covered offense may, on
> motion of the defendant, the Director of the Bureau of
> Prisons, the attorney for the Government, or the court,
> impose a reduced sentence as if sections 2 and 3 of the Fair
> Sentencing Act of 2010 (Public Law 111–220; 124 Stat.
> 2372) were in effect at the time the covered offense was
> committed.

The limitations on the foregoing are, as indicated above, the timing of the offense —before August 3, 2010, and whether a defendant has already benefitted from Fair Sentencing Act relief or was denied First Step Act relief "after a complete review of" a previous motion under § 404. And getting a reduced sentence is not automatic: the grant of authority to the sentencing court to reduce a sentence is permissive, not obligatory.

> c) LIMITATIONS.—No court shall entertain a motion
> made under this section to reduce a sentence if the sentence
> was previously imposed or previously reduced in accordance
> with the amendments made by sections 2 and 3 of the Fair
> Sentencing Act of 2010 (Public Law 111–220; 124 Stat.
> 2372) or if a previous motion made under this section to
> reduce the sentence was, after the date of enactment of this
> Act, denied after a complete review of the motion on the
> merits. Nothing in this section shall be construed to require
> a court to reduce any sentence pursuant to this section.

One searches in vain for an indication that "a covered offense" means "what an individual defendant did." A covered offense is "a violation of a Federal statute, the statutory penalties for which" were changed by the Fair Sentencing Act. The defendant's "covered offense" is the violation of a specified category of Federal statutes, a clearly stated category characterized by the historic fact that the Fair

Sentencing Act changed the statutory penalties. The express "limitations" on eligibility have to do with the *time* of the offense and whether a sentenced offender already received the benefit of the Fair Sentencing Act or the First Step Act. And the last sentence in the "limitations" paragraph is significant (and arguably the greatest limitation of all): nothing in the First Step Act *requires* that an eligible defendant gets relief. He or she is getting a remedy for the unavailability of the lowered statutory penalties—a consideration of the sentence in the present with the lowered statutory penalties in mind. "Nothing" in the First Step Act "require[s]" a judge to reduce "any sentence" pursuant to § 404.

In *Rose,* 379 F. Supp. 3d 223, Judge Valerie Caproni painstakingly examined the argument that eligibility must be tied to drug quantity, and held that it relied on two incorrect "interpretative choices": first, that the "dependent clause, 'the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010' . . . , modif[ies] the noun 'violation,' rather than modifying the phrase 'Federal criminal statute'"; and second, that the term violation "mean[s] the actual conduct underlying the offense, rather than the elements of the offense." *Id.* at 228.

Judge Caproni rejected the government's first "interpretative choice" by holding that "penalties" modifies the phrase "Federal criminal statute," not the noun "violation," and thus evinces a clear intent that eligibility turns on the statute underlying a defendant's conduct.

> Here, the "penalties" clause is most naturally read as modifying "Federal criminal statute," the noun phrase immediately next to it. *See id.* Indeed, Congress appears to have deliberately inserted "Federal criminal statute" after the word "violation" and added the word "statutory" before the word "penalties" to achieve this exact result. If the Government's interpretation were correct, Congress could have straightforwardly legislated that result by omitting from § 404(a) the phrase "Federal criminal statute," which is already implied by the reference to the Fair Sentencing Act, and the adjective "statutory" before the noun "penalties." Section 404(a) would then have read: "the term 'covered offense' means a violation, the penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." But that is not what Congress did. Instead, it inserted two otherwise unnecessary references to federal statutes, making clear that eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct.

*Id.* at 228.    Judge Caproni reasoned that the use of the past tense "modified" "confirm[ed] that the clause was intended to modify 'statute,' not 'violation.'"    *Id.* at 229.   That is, "[b]ecause the Fair Sentencing Act was not retroactive, it could not have 'modified' any penalties imposed for violations 'committed before August 3, 2010.' Rather, the only 'statutory penalties' that the Fair Sentencing Act could have modified were the crack-cocaine penalties provided in the Controlled Substances Act."    *Id.* (footnote omitted).

As to the government's second "interpretative choice," Judge Caproni observed that "even if the dependent clause could be construed as modifying 'violation,' it is at least ambiguous whether 'violation' refers to the elements of the statute of conviction or the offense conduct [and] [t]hat ambiguity must be resolved in the defendant's

favor." *Id.* To find otherwise would defeat the remedial purpose of the Fair Sentencing Act and First Step Act to "mitigat[e] the unfairness created by the crack-to-powder cocaine ratio." *Id.* Thus Judge Caproni concluded that "the statutes should be construed in favor of broader coverage" and a court must read the unequivocal plain language of § 404(a) to tie eligibility to the penalties of the statute under which a defendant was convicted rather than drug weight. *Id.*

Many if not most courts have reached the same conclusion, first expressed in depth in Judge Robert Jonker's decision in *Boulding,* 379 F. Supp. 3d 646. *See also, e.g., United States v. Laguerre*, No. 02-30098-3, 2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019) (noting that the parties agreed that defendant was eligible under the First Step Act because, among other things, the statutory penalties of his offense were lowered by Section 2 of the Fair Sentencing Act); *United States v. Allen*, No. 96-00149, 2019 WL 1877072, at *3 (D. Conn. Apr. 26, 2019) ("Under the plain language of [this section], whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated." (citation and internal quotation marks omitted)); *United States v. Barber*, No. 09-207-04, 2019 WL 2526443, at *2 (D.S.C. June 19, 2019) ("It is the statute of conviction, not actual conduct, that determines eligibility for relief under the First Step Act."); *Johnson*, 2019 WL 2590951, at *3 ("The statute that Johnson violated is one for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act. Therefore, Johnson's offense is 'covered' under the First Step Act, and he is eligible for a sentence reduction."); *Valentine*, 2019 WL 2754489, at *5 (Jonker, J.)

("'[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act.'" (quoting *Boulding*, 379 F. Supp. 3d at 651)); *United States v. Lutcher*, No. 03-338, 2019 WL 3006414, at *3 (E.D. La. July 10, 2019) ("The Court concludes that the determination of eligibility for a sentence reduction under Section 404 of the First Step Act should be based on the offense of conviction."); *United States v. Henderson*, No. 05-60040, 2019 WL 3211532, at *4 (W.D. La. July 15, 2019) ("[T]he First Step Act indicates Congress' intent to tie eligibility to a defendant's statute of conviction rather than his or her offense conduct."). In *United States v. White*, No. 99-628-04, 2019 WL 3228335, at *2 n.1 (S.D. Tex. July 17, 2019) Judge Lee Rosenthal collected some 42 cases that have found that it is the statute of conviction that controls eligibility under § 404.

This Court is satisfied that these decisions are sound, and holds that the Mack defendants may bring these motions under § 404. The thrust of that section of the First Step Act is sentence reform; eligibility springs from a "covered offense," not from being a "covered offender." There is no dispute that well before August 3, 2010, these defendants violated 21 U.S.C. § 841(a)(1) which is a covered offense because its mandatory minimum penalties in 21 U.S.C. § 841(b)(1)(A) were changed by the Fair Sentencing Act. The defendants' offense conduct is relevant to whether their sentences will be reduced, as opposed to whether they may move for a sentence reduction.

23

### B. Defendants' Eligibility is Unchanged by Their Conviction for Trafficking in a Penalty Triggering Quantity of Powder Cocaine

Having found that First Step Act relief is tied to the statute of conviction, the Court must decide if the quantity of powder cocaine charged and found against these defendants destroys their eligibility for § 404 sentencing relief, as the government argues. There are several reasons for rejecting this position.

First is the simple fact that the Fair Sentencing Act *did* change the statutory penalties of 21 U.S.C. § 841(b)(1)(A). Second, the First Step Act does not restrict the "covered" "Federal criminal statute[s]" by suggesting "as applied." Third, harking back to *Richardson,* this Court is entitled to look at what drove the original sentence in this case—the successful prosecution of these defendants as dealers in both types of cocaine, who throughout the conspiracy "cooked" powder cocaine into crack. Isolating defendants' powder cocaine offense conduct as dispositive ignores the powerful facts that the government witnesses regularly intermingled these defendants' acquisitions and sales of powder and crack cocaine; that large portions of their crack sales were what they cooked out of the powder cocaine they purchased; and that the quantity of crack cocaine calculated against these defendants drove their punishment all by itself.

The Mack defendants' presentence reports uniformly determined drug weight according to a statement of facts U.S. Probation requested and received from the government. The offense conduct described a "firmly entrenched" and successful drug operation. "The organization primarily sold cocaine and cocaine base . . . from various

buildings, alley ways, and backyards" in Plainfield, New Jersey. The main cooperator against the Mack defendants, identified as the "primary courier for the organization," testified that he traveled to New York City "to purchase cocaine and crack cocaine" for the "members of the organization," who are described as purchasing "large quantities of cocaine in New York City" that were later "cooked" into crack cocaine. This witness was first arrested in connection with a controlled buy of 108 grams crack cocaine that was set up by the DEA. Eventually, law enforcement established that these defendants and others "were involved in the distribution of cocaine and crack cocaine" in New Jersey and North Carolina. Trial testimony from another cooperator described Jesse Opher as cooking ounces of cocaine into crack cocaine and then packaging the crack into bottles. According to a cooperator, between 1995 and 1997 he purchased approximately 2 kilograms of crack cocaine from Ronald Mack. Other witnesses described large purchases of cocaine.

Overall, the government's version of their offense conduct as set forth in the presentence reports lumps together powder cocaine and crack cocaine purchases and sales as the essence of the Mack defendants' longstanding drug operation. The interplay of crack cocaine and powder cocaine activity is further described in the section of role adjustments. Rodney Mack is identified as the leader and organizer. "He managed and organized the distribution of the drugs. Rodney Mack was also the primary 'owner' of the drugs and was responsible for storing the drugs, reprocessing, and repackaging the drugs." He determined where drug sales occurred and directed that drugs were sold

from only one location at any point in time. Jesse Opher was "the primary 'cook' for the organization and utilized various locations to store and manufacture cocaine."

When defense counsel argued that there were two "object offenses" of the charged conspiracy and one of them was distribution of crack cocaine, she was correct. What the presentence reports demonstrate is that you cannot have one without the other.

But at sentencing it quickly emerged that the highest base level for the drug offenses was easily and promptly reached by the weight of the crack alone. Ronald Mack was sentenced first. The government argued the starting base offense level was 38, as found by U.S. Probation.

> I think clearly the drug quantity should be as found by probation, that is a[t] Level 38. I don't think there's any dispute that this was a long running long standing drug operation which was involved in enormous amounts of both powder cocaine and crack cocaine.
>
> The testimony was clear from the evidence in addition to lab reports that we were dealing with both powder cocaine and cocaine base. Testimony of the witnesses, in particular George Hardison and Lateef Taylor, clearly disclose that substance. In addition, I might say the North Carolina witnesses clearly identify the substance that was involved in at least part of this conspiracy as crack cocaine.
>
> George Hardison was a user of crack cocaine, so he among most of the other witnesses should have know[n] the type of substance it is that he was using. So I think it is clear and conceded by the defense that offense level for the drug quantities should be 38.

(4/17/02 Tr. at 18:25-19:17.)

Rodney Mack was the last to be sentenced. By that time, the understanding that the crack cocaine drove the sentencing range was embedded in colloquy among the Court, the defense, and the prosecution. From the government:

> I do point out, based on the probation report, that the findings with regard to the kilograms of cocaine base in and of itself would fin[d] – would support a level 38, regardless of the heroin or the powder cocaine.

(4/23/02 Tr. at 15:13-16.)

Excising the powder from the crack is wrong; the government never did so up until now, as the foregoing demonstrates. Finding these defendants eligible does not write off their responsibility for dealing in powder cocaine as well as dealing in crack cocaine. That constitutes a fact that bears on what relief these defendants are entitled to. What the Court finds now is that the jury's verdict does not disqualify the Mack defendants from consideration under § 404.

Finally, while the Court is satisfied that the foregoing discussion provides ample basis for its ruling on eligibility, there are other reasons for this conclusion based on the significant differences between process under § 404 and process under the Fair Sentencing Act.

The Commission has explained that under § 404 of the First Step Act "*[a]ny defendant* sentenced before the effective date of the Fair Sentencing Act (August 3, 2010) who did not receive the benefit of the statutory penalty changes made by the [Fair Sentencing] Act *is eligible for a sentence reduction under the First Step Act*." *Special Edition* at 4

(emphasis added).  Indeed, unlike the early rounds of retroactive crack sentencing relief, the First Step Act does not impose any extrinsic limits on a sentencing court.  *Boulding*, 379 F. Supp. 3d at 653.  As Judge Jonker observed:

> These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions, and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it. Rather, Congress has directly authorized the possible reduction under 18 U.S.C. § 3582(c)(1)(B). Under that section a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *Id*. Because the First Step Act expressly permits courts to modify a term of imprisonment, the First Step Act serves as the basis for relief under Section 3582(c)(1)(B).

*Id*.

Two points bear mentioning here.  Judge Jonker points out that the Commission "has nothing to do with" the First Step Act.  *Id*.  The Commission acknowledges that by explaining "[t]he Act does not contain any directives to the Commission requiring action."  *Special Edition* at 5.  And *Boulding's* reference to 18 U.S.C § 3582(c)(1)(B)[7] is significant because the sweep is broader and unhampered by a tie-in with the guideline sentencing range, permitting modification to the extent "expressly permitted by statute."  In contrast with the restrictions in § 3582(c)(2), the only limits placed on the

---

[7] During oral argument, the parties agreed that, if the Court finds that the Mack defendants are eligible under the First Step Act (and it has), any sentence reduction would be governed by § 3582(c)(1)(B).

Court under the First Step Act are "the statutory minimums of the Fair Sentencing Act's new thresholds." *Boulding*, 379 F. Supp. 3d at 653. Thus, unlike earlier rounds of sentence reductions, the guidelines, while they should inform a court's discretion, do not limit it. *Id.*

The First Step Act, while directing broad-based initiatives affecting all sentenced offenders, aims in § 404 to capture all those defendants—such as the Mack defendants—who were excluded from the Fair Sentencing Act. Section 404 is about "sentencing reform" and looks to that forgotten group of offenders serving sentences under guidelines deemed now, and as far back as 2010, to be overly harsh. The relief offered under the First Step Act is a second look at those sentences, which these defendants are eligible for.

## V.    Resentencing Procedure

As indicated above, First Step Act decisions vary considerably in the type of proceedings that generated the various rulings. What has become a special focus is the jurisprudence animating a decision, whether made on the papers or in a contested proceeding with the defendant present and allocuting. Specifically, will a defendant get the benefit of the Supreme Court's constitutional holdings in *United States v. Booker*, 543 U.S. 220 (2005) and *Alleyne v. United States*, 570 U.S. 99 (2013), which extended the principles announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) to mandatory minimum sentences? These are rulings that have led to what is frequently called "a sea change" in the sentencing regime. The government argues in its papers and at oral

argument that this decisional law is not available to the Mack defendants because "Section 404 allows imposition of a reduced sentence as if the Fair Sentencing Act 'were in effect at the time the covered offense was committed.'" (D.E. 556 at 5.) In other words, the government contends that § 404 requires a Court to shift its sights back in time and adhere to the sentencing jurisprudence in effect when a defendant was originally sentenced. The Court disagrees.

The government correctly notes that the Supreme Court sentencing jurisprudence at issue here is not retroactive on collateral review. *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *In re Olopade*, 403 F.3d 159, 164 (3d Cir. 2005). If the government is correct that this jurisprudence must, as a corollary, be ignored, then the Court lacks discretion to consider the guidelines advisory rather than mandatory and must put aside *Booker*'s signature holding. *See United States v. Merced*, 603 F.3d 203, 213 (3d Cir. 2010) ("*Booker* held unconstitutional that portion of the Guidelines that made them mandatory . . . ." (citation and internal quotation marks omitted)). But while a sentence reduction is a form of collateral review, *see Wall v. Kholi*, 562 U.S. 545, 551-52 (2011) (agreeing that collateral review includes motions to reduce sentence), § 404 creates a remedial procedure that is wholly distinct and not bound by the same restrictions as a collateral attack on a sentence. It is not fixing a mistake; it is requiring a review.

Unlike prior sentence reductions under 18 U.S.C. § 3582(c)(2), "[S]ection 404(b) of the First Step Act contains a *broader grant of authority* to 'impose a reduced sentence as

30

if sections 2 and 3 of the Fair Sentencing Act of 2010' were in effect." *United States v. Dodd*, 372 F. Supp. 3d 795, 797 (S.D. Iowa 2019) (emphasis added). As Judge Robert Pratt observed in *Dodd*, the fact that, under 18 U.S.C. § 3582(c)(2), Supreme Court sentencing jurisprudence "do[es] not trigger a right to relief retroactively on collateral review, is distinct from whether [it] appl[ies] to proceedings independently authorized [by Congress] under the First Step Act." *Dodd*, 372 F. Supp. 3d at 798 (citation omitted). Critically, in creating the First Step Act's independently authorized procedures, a court must presume that Congress legislated in light of current constitutional requirements. *See Henderson*, 2019 WL 3211532, at *4 n.8 (rejecting the argument that, because Congress did not expressly authorize retroactive application of *Alleyne* under the First Step Act, it does not apply); *United States v. Stanback*, 377 F. Supp. 3d 618, 623 (W.D. Va. 2019) ("Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so."). To find otherwise would mean that Congress legislated without regard to constitutional norms, which is a conclusion courts have consistently rejected. *See, e.g.*, *Dodd*, 372 F. Supp. 3d at 797-98 (concluding that, because *Apprendi* and *Alleyne* are binding on the court today, they apply to sentence reductions under the First Step Act); *United States v. Graves*, No. 04-070, 2019 WL 3161746, at *2 (E.D. Tenn. July 15, 2019) ("The First Step Act neither directs nor implies that the Court should perpetuate the application of an unconstitutional practice when determining a new sentence that complies with the Act's directives, and many

courts faced with the issue have applied the *Apprendi* rule in First Step Act re-sentencings." (citation and internal quotation marks omitted)); *United States v. VanBuren*, No. 00-00066-1, 2019 WL 3082725, at *3 (W.D. Va. July 15, 2019) ("[T]his Court joins others in this district finding the holdings of *Apprendi* and *Alleyne* applicable in the First Step context with respect to whether the statutory penalties have been modified."); *Wright v. United States*, No. 95-39, 2019 WL 3046096, at *5 (E.D. Va. July 11, 2019) ("Therefore, the Court finds that because Congress decided to apply the FSA retroactively through the FIRST STEP Act, the relevant sentencing precedents of *Booker* and its progeny must be considered in imposing the new reduced sentences.").[8]

Above all, application of subsequent Supreme Court sentencing jurisprudence to the Mack defendants through § 404 does not disturb the principles underpinning the doctrine of non-retroactivity for new constitutional rules. As the Supreme Court explained in *Danforth v. Minnesota*, 552 U.S. 264, 280 (2008), the "rule of nonretroactivity was fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings." *See also United States v. Jones*, No. 08-00040, 2019 WL 3074075, at *2 (W.D. Va. July 15, 2019) ("Thus, a determination under *Teague* that a

---

[8] In fact, the government has conceded in another district that a First Step Act defendant sentenced pre-*Booker* should benefit from subsequent changes in sentencing law. *See United States v. Newton*, No. 02-30020, 2019 WL 1007100, at *4 (W.D. Va. Mar. 1, 2019) (noting that, for a First Step Act defendant originally sentenced in 2003, the "government agrees that the court should recalculate the advisory guideline range under current law, and pursuant to the now-operative version of the United States Sentencing Guidelines, assess the Section 3553(a) factors based on the facts in the record and issue a new sentence").

rule is not retroactive on collateral review 'speaks only to the context of federal habeas.'" (quoting *Danforth*, 552 U.S. at 281)).  Section 404 does not create even the specter of a federal invasion into state criminal proceedings because it only affects a very limited class of offenders convicted of a subset of federal drug offenses.  For those reasons, the Court finds that, in deciding whether to exercise its discretion to reduce the Mack defendants' sentences pursuant to § 404, it must consider current constitutional requirements for sentencing.

Finally, the Mack defendants shall be present at the resentencing.  One important reason is the Supreme Court's holding that district courts "may consider evidence of a defendant's postsentencing rehabilitation at resentencing and such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." *Pepper v. United States*, 562 U.S. 476, 504–05 (2011).  The Court is entitled to question each man about the significance of his participation in programs over the years of confinement.  Each man in turn is entitled to speak at such an important time—after all, a hearing offers the opportunity to be heard.

Judge John E. Jones, III, observed in his Order in *United States v. Rhines*, No. 01-00310 (M.D. Pa. June 3, 2019), ECF No. 355, that "[g]iven the . . . changes in jurisprudence and legislation, we find that it would be fundamentally unfair to deny [a First Step Act defendant] a full resentencing hearing."  *Id.* at 4; *accord* Order at 7, *United States v. Loner*, No. 00-00050 (M.D. Pa. July 8, 2019), ECF No. 370 (Jones, J.).  This Court agrees.  In fact, while the government has not backed away from its eligibility

arguments, the parties do not appear very far apart on how a resentencing might proceed.  At oral argument, the Court asked the defense:

> [Y]ou are also talking about the sentencing regimen that encompasses three steps: What do the guidelines say?
>
> Are there any motions made under the guidelines?
>
> Is the net sentence after considering any motions made after the guidelines sufficient and not more than necessary to accomplish the statutory purposes of sentencing?
>
> That is what you are talking about?
>
> MS. ARKEL: Yes.
>
> THE COURT: Okay. And you are saying that the court has in terms of written submissions with the exception of updates from the BOP as to the performance of the defendants since 2017. And that added to that would be the defendant's presence, personal statements being made --
>
> MS. ARKEL: Yes.
>
> THE COURT: -- and any letters in support?
>
> MS. ARKEL: Yes, Your Honor
>
> THE COURT: All right. That is the scope of any hearing that you would be looking for if I find eligibility; is that it?
>
> . . . .
>
> MS. ARKEL: Yes.
>
> THE COURT: All right.
>
> Let's hear from you, Mr. Coyne.

> MR. COYNE: Sure. So maybe there is an area of agreement between at least my friend and me that there is not a recalculation of the guidelines range as part of a sentence reduction proceeding under the First Step Act.
>
> I think Louise, I heard her saying, in essence, we are not looking for that. We are asking you to consider a[t] stage two, are there any departures that are warranted, and stage three, the 3553(a) factors.

(6/21/19 Tr. at 79:23-81:5.)

Certainly, to individualize themselves in the context of the § 3553(a) factors, as any defendant facing sentence is entitled to, the defendants must be present.  Even before *Booker,* Chief Judge Edward Becker wrote for the Third Circuit about the importance of the encounter between the defendant and the sentencing judge in *United States v. Faulks,* 201 F. 3d 208 (2000).  "In our view, the notion that the sentencing court must 'eyeball' the defendant at the instant it exercises its most important judicial responsibility, whose daunting character has not been eliminated by the Sentencing Reform Act and the Sentencing Guidelines, is far from a formality. Rather, it is the embodiment of a value deeply embedded in our polity (and our jurisprudence)."  *Id.* at 209.[9]

---

[9] The opportunity to address the Court will be a meaningful one.  Before their sentences to Life were imposed, the Macks and Jesse Opher had little to say that could affect their sentences.  Ronald Mack thanked his family for "coming here and being here for me." (4/17/02 Tr. at 32:25.)  Rodney Mack, the last one sentenced, did not speak.

## VI.    Conclusion

The Court finds Ronald Mack, Rodney Mack, Jesse Opher, and Hassan Hawkins are eligible to move for reduced sentences under § 404 of the First Step Act.  U.S. Probation shall prepare supplemental presentence reports and sentencing dates shall be set at which the defendants shall appear.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.